UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MORRIS WEATHERSPOON #471817,

    Plaintiff,

v.                                        Case No. 2:16-cv-263
                                            HON.  GORDON J. QUIST
KIM ESSLIN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Morris Weatherspoon, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Jill Strahan, Kim Esslin, John Thibault, and Michael McDowell.  The matter before the undersigned is Defendants' "Motion for Summary Judgment."   (ECF No. 29.) Defendants argue that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel.   For the reasons stated below, the undersigned recommends that the Court grant Defendants' motion and dismiss this case in its entirety.

In a previous action in this Court—*Weatherspoon v. Williams et al.*, No 2:14-cv-108 (W.D. Mich.) ("the First Action")—Plaintiff initially brought suit against twenty-three prison officials. (ECF No. 1.)  In that complaint, Plaintiff alleged that in retaliation of filing grievances against co-workers, Defendants Thibault, McDowell, and Esslin issued a false Class I misconduct ticket on September 16, 2012, for possessing an eight inch knife.  Plaintiff also alleged that Defendants Thibault, McDowell, and Esslin retaliated against him by keeping him in administrative segregation and later placing him in a six-man cell with other dangerous prisoners.

- 2 -

In addition to this retaliation claim, Plaintiff advanced several unrelated allegations and claims against various prison officials that occurred between October 15, 2012, and January 3, 2013.[1]

Because the other claims and parties were improperly joined, the undersigned recommended that the Court permit the first claim—the retaliation claim against Defendants Thibault, McDowell, and Esslin—to proceed and dismiss the remaining parties without prejudice. (ECF No. 43, PageID.220.)  Plaintiff objected to this recommendation and argued that joinder was proper because all of the defendants were part of one conspiracy at the same prison facility. (ECF No. 49.)  Alternatively, Plaintiff requested that the Court permit him to proceed to discovery so he could uncover additional facts that would establish the broad conspiracy.  Upon the completion of discovery, Plaintiff stated that he would amend the complaint to include the additional allegations.

On February 4, 2016, the Court adopted the Report and Recommendation and dismissed all defendants except Thibault, McDowell, and Esslin.  (ECF No. 51.)  In addressing Plaintiff's conspiracy arguments, the Court determined that the complaint was "devoid of any plausible allegations of conspiracy involving the remaining Defendants (Thibault, McDowell and Es[s]lin) and the Defendants who are to be dismissed." (PageID.240.)  In addition, the Court found that there was no reason to allow Plaintiff to proceed to discovery and that Plaintiff failed to indicate any amendments to the complaint.

---

[1] The undersigned previously summarized Plaintiff's allegations and claims in that case as follows:

> Plaintiff alleges that on October 15, 2012, Defendant dentist Charles Simons denied him care; and, on October 26, 2012, October 15, 2012, another defendant, who was a dentist, denied him care; and, on October 26, 2012, Defendant dental hygienist Kimberly Franckowiak denied him care. Plaintiff alleges that Defendants Schwesinger, Olson, Marlette, Dicken, Johnson and Mastaw retaliated against him by submitting a false request for protection in response to Plaintiff's grievance filings. Plaintiff alleges that Defendants Beaudion and Raffaele retaliated against him by submitting a false misconduct ticket in order to keep Plaintiff in segregation. Plaintiff claims that he was denied medical care for an abscess in his leg by Defendants Williams, Rogers, Schwesinger, Dicken, Johnson, Mastaw, Beaudion and Raffaele. In January, 2013, Plaintiff asserts that Defendants MacLaren, Armstrong, and Curley retaliated against him by denying him access to the courts.

(ECF No. 43, PageID.217-218.)

On November 28, 2016, Plaintiff filed the complaint in this case ("the Second Action"). The Court issued a screening opinion on December 21, 2016, and summarized Plaintiff's allegations in the complaint as follows:

> Plaintiff has filed a 32-page complaint, which consists of repetitive and hyperbolic allegations about a narrow set of facts. He alleges that, on September 16, 2012, Defendants Esslin, Thibault, and McDowell conspired to charge him with a false misconduct for possession of an eight inch knife. Despite Plaintiff's protestations of innocence, Plaintiff was placed in a six-man cell in administrative segregation. Plaintiff complains that the cell also housed assaultive predators and that Plaintiff feared being sexually assaulted by those prisoners. Plaintiff repeatedly complained, but Esslin, Thibault, and McDowell allegedly ignored his concerns. Defendant Esslin eventually told Plaintiff that, if he wished protective custody, he would need to declare an intent to harm himself, so that he could be placed in the video-observation cell. Plaintiff followed Esslin's instruction, and he was given a suicide vest and blanket and placed in the observation cell.
>
> On September 17, 2012, Defendant Strahan conducted an assessment of Plaintiff's suicide risk. Plaintiff told Strahan that he was not suicidal and that he had only claimed to be suicidal in order to avoid being kept in dangerous administrative segregation. He also told Strahan that he had been falsely accused of the misconduct that put him in segregation. Defendant Strahan allegedly responded harshly, saying that Plaintiff had possessed a knife. Strahan took no action to get Plaintiff back into the general population. Plaintiff contends that, on September 19, 2012, Strahan joined into a conspiracy with Defendants Esslin, Thibault and McDowell, who themselves were continuing a conspiracy against Plaintiff that occurred while Plaintiff was housed at Chippewa Correctional Facility, before Plaintiff was transferred to KCF. He also contends that, despite knowing that continued placement in the suicide cell was detrimental to Plaintiff's mental health, Defendant Strahan refused to release Plaintiff from suicide observation.
>
> Defendants Esslin[], Thibault and McDowell continued to ignore Plaintiff's claims of pain and suffering, as well as his declared need to be released so that he could receive essential dental treatment. On September 21, 2012, case manager Amy Klein released Plaintiff from suicide observation. On September 25, 2012, Plaintiff was found not guilty of the misconduct.

> Plaintiff alleges that Defendants conspired with each other and with officials at Chippewa Correctional Facility to deprive Plaintiff of his constitutional rights. He contends that Defendants took the alleged actions in retaliation for the grievances Plaintiff filed at Chippewa Correctional Facility. He also alleges that Defendants subjected him to cruel and unusual punishment.

(ECF No. 4, PageID.63-64.) Ultimately, the Court determined that Plaintiff's claims were untimely because the complaint was filed outside the three-year statute of limitations. Therefore, the action was dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) and judgment was entered in favor of Defendants. (ECF No. 5.)

After the judgment was entered, Plaintiff filed a "motion for relief from the judgment and or order due to fraud, misrepresentation, and misconduct" (ECF No. 6) and a supplemental brief to his motion (ECF No. 8). The Court granted Plaintiff's motion in part because it found that Plaintiff raised the claims against Defendants Esslin, Thibault, and McDowell in the First Action. (ECF No. 14.) Because it found that the claims in the First Action were dismissed without prejudice on the grounds of misjoinder, the Court determined that the statute of limitations were tolled from when Plaintiff filed the First Action to when the claims were dismissed without prejudice. Therefore, Plaintiff's claims against Defendants Esslin, Thibault, and McDowell in the Second Action were timely. However, the Court still held that Plaintiff's claims against Defendant Strahan were untimely.[2] Based on these facts, the Court vacated its previous opinion and judgment in part and served the complaint on Defendants Esslin, Thibault, and McDowell. (ECF No. 14.)

Meanwhile, the First Action proceeded through discovery and, on June 14, 2017, the case was tried before the Court. During the bench trial, the Court heard testimony from

---

[2] Plaintiff filed an "objection" to the Court's Order which determined the claims against Defendant Strahan were still time-barred. (ECF No 18.) This objection is still pending.

- 4 -

Plaintiff and Defendants Thibault, McDowell, and Esslin. On June 20, 2017, the Court issued a Findings of Fact and Conclusions of Law, which described the facts as follows:

> The alleged retaliation occurred at Kinross Correctional Facility. Weatherspoon arrived at Kinross on September 11, 2012. Weatherspoon had previously been incarcerated at Chippewa Correctional Facility. On September 16, 2012, Defendant Thibault conducted a random search of Weatherspoon's cell at Kinross and found an eight-inch homemade knife or "shank" in Weatherspoon's defined area of control. Defendant Thibault confiscated the shank, secured Weatherspoon's property, and notified Defendant Esslin. At 1815, or 6:15 p.m., Defendant Thibault wrote a misconduct report, stating that he found the shank at 1715, or 5:15 p.m. Soon thereafter, Defendant Esslin reviewed the misconduct ticket, but made a clerical error in writing the time of the review as 1709, or 5:09 p.m.
>
> Following the incident, Defendant Esslin made arrangements for Weatherspoon to be taken to administrative segregation. Defendant McDowell, who was working in segregation that day, was identified on the misconduct ticket as the officer who was notified of Weatherspoon's transfer to segregation. At the time Weatherspoon was taken to segregation, he reported thoughts of self-harm to Defendant Esslin. Defendant Esslin notified healthcare about Weatherspoon's statements of selfharm.
>
> Weatherspoon was placed in a six-man cell in segregation. Weatherspoon was not housed with any prisoner with a predator/sexual risk behavior prisoner or, if he was housed with such an inmate, no Defendant was aware of that fact. Weatherspoon remained in the six-man cell for about 30 minutes, after which time he was taken to healthcare and placed in an observation unit. Weatherspoon remained in the observation unit for about nine days. Weatherspoon was subsequently returned to segregation and, eventually, to the general population.

(ECF No. 176, PageID.1356-1357.) In holding that Plaintiff's retaliation claim failed, the Court reasoned:

> Defendant Thibault did not "plant" the shank in Weatherspoon's belongings, but instead found it during a random search. Defendant Esslin properly reviewed the ticket that Defendant Thibault wrote and mistakenly wrote the wrong time of the review on the misconduct ticket. Defendants Thibault and Esslin did not fabricate the misconduct ticket, and Weatherspoon may well have been

- 5 -

>convicted of the misconduct had Defendant Esslin been asked to explain the discrepancy in times. Defendant McDowell's only involvement was being the corrections officer who was notified of and handled Weatherspoon's placement in administrative segregation.
>
>Weatherspoon also failed to show a causal connection to his prior grievance activity. Because Defendants did not know that Weatherspoon had previously filed grievances, their actions against Weatherspoon could not have been motived by Weatherspoon's protected activity.

(ECF No. 176, PageID.1359.). Accordingly, the Court entered a judgment against Plaintiff and in favor of Defendants in the First Action. (ECF No. 177.)

Defendants have now filed a "Motion for Summary Judgment" based on the judgment in the First Action. (ECF No. 29.) Despite titling their motion as a motion for summary judgment, Defendants seek an order of dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Furthermore, the exhibits attached to Defendants' motion are court filings from the First Action. Because these exhibits are matters of public record, the undersigned may consider these documents when evaluating a Rule 12(b) motion. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Accordingly, the undersigned will construe Plaintiff's motion as a motion to dismiss under Rule 12(b)(1) and 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in

the light most favorable to plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations.  *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Conley*, 355 U.S. at 47).  The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts.  *Mayer*, 355 U.S. at 638.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *Delorean*, 991 F.2d at 1240.  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Id.* (internal quote omitted).

"The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion [or true res judicata] and issue preclusion [or collateral estoppel]."  *J.Z.G. Res., Inc. v. Shelby Ins.*, 84 F.3d 211, 214 (6th Cir. 1996).  Under claim preclusion, "a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment."  *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith,*, 918 F.2d 658, 660 (6th Cir. 1990).  Under issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  *Montana v. United States*, 440 U.S. 147, 153 (1979).

As the Supreme Court has recognized, "federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The reasoning behind the application of these common-law doctrines is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id;* s*ee also Sanders Confectionery Prods. v. Heller Fin.*, 973 F.2d 474, 480 (6th Cir. 1992) ("Courts apply the doctrine of res judicata to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources."). Defendants have the burden of establishing that res judicata or collateral estoppel apply. *Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002)

Defendants first argue that Plaintiff's claims are barred by true res judicata or claim preclusion based on the three-part test established by the Michigan Supreme Court. (PageID.312. citing *Adair v. State*, 470 Mich. 105, 111, 680 N.W.2d 386, 390 (2004)). However, "[w]hen the judgment upon which a party relies to make its claim preclusion argument was issued by a federal court, 'we look to federal law to determine its preclusive effect.'" *Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 479 (6th Cir. 2014) (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007)); s*ee also Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."). Here, there is no state-court judgment and the First Action was filed in federal court, thus, at issue is the preclusive effect of a judgment entered by a federal court. Therefore, the undersigned applies the federal claim preclusion principles.

Unlike Michigan's three-part test, the Sixth Circuit has established a four-part test for claim preclusion. "Claim preclusion applies when (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions." *Heike*, 573 F. App'x at 480 (citing S*anders Confectionery Prods., v. Heller Fin.*, 973 F.2d 474, 480 (6th Cir. 1992). The third and fourth elements of the claim preclusion test "in practice require much the same inquiry: whether the second action seeks remedies 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" *Nguyen ex rel. U.S. v. City of Cleveland*, 534 F. App'x 445, 451 (6th Cir. 2013) (quoting Restatement (Second) of Judgments § 24(1)). "If the two claims arose out of the same transaction, they share an 'identity,' and Plaintiff should have raised both in the first suit." *Id.* The rationale behind this requirement is to compel litigants to bring all related claims in a single lawsuit. *See Wilkins v. Jakeway*, 183 F.3d 528, 532 n. 4 (6th Cir. 1999).

Here, the second, third, and fourth elements are satisfied. After various dismissals, the First Action and the Second Action have the same Plaintiff, Morris Weatherspoon, and the same Defendants, John Thibault, Michael McDowell, and Kim Esslin. In addition, although Plaintiff argues that the First Action involved only a retaliation claim, while the Second Action involves different claims "such as the failure to protect and conspiracy e.g." (PageID.376.), the claims in both actions arise from the same common nucleus of facts. In the First Action, Plaintiff's retaliation claim against Defendants Esslin, Thibault, and McDowell was based on Defendants (1) filing a false misconduct ticket for possessing an eight inch knife on September 16, 2012; (2) keeping him in administrative segregation for an extended period of time for no reason; and (3)

placing him in a six-man cell with other dangerous prisoners. Like the First Action, Plaintiff alleges these same events in the Second Action. Instead of asserting a retaliation claim in the Second Action, Plaintiff now asserts new claims—conspiracy to retaliate, failure to protect, excessive force, and deliberate indifference. "The fact that [Plaintiff] now asserts alternative theories of recovery and seeks a different remedy does not allow him to avoid claim preclusion, when those other theories could have been asserted and remedies could have been sought in the earlier action." *Hamilton v. State Farm Fire & Cas. Co.*, 127 F.3d 1102 (6th Cir. 1997).

The problem with applying claim preclusion to bar Plaintiff's claims in this case is based on the first element—whether there is a final decision on the merits in the first action by a court of competent jurisdiction. At first glance, it would appear that this element is easily met because the Court entered a judgment against Plaintiff and in favor of Defendants on June 20, 2017. Although Plaintiff is appealing the judgment, "it is well established that a final trial court judgment operates as res judicata while an appeal is pending." *Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992). However, the Court has previously determined that Plaintiff attempted to bring these claims in the First Action and that the claims were dismissed without prejudice. The undersigned follows this ruling. Because a dismissal without prejudice is not a final judgment on the merits, claim preclusion does not bar Plaintiff's claims in this case.

Alternatively, Defendants argue that Plaintiff's claims are barred by collateral estoppel or issue preclusion. The Sixth Circuit has held that a federal judgment bars litigation of an issue in a later case if the following requirements are met: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must

have had a full and fair opportunity to litigate the issue in the prior proceeding. *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320-21 (6th Cir. 2014) (quoting *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012)).

Here, the undersigned finds that all four requirements are met. In the First Action, the Court held that Plaintiff's retaliation claim failed after explicitly finding that (1) Defendant Thibault conducted a random search of Plaintiff's cell on September 16, 2012, and found an eight inch knife; (2) Defendant Thibault did not plant the knife; (3) Plaintiff made statements regarding his thoughts of self-harm and Defendant Esslin notified healthcare about these statements; (4) Plaintiff was placed in a six-man segregation cell for 30 minutes and was either "not housed with a predator/sexual risk behavior prisoner or, if he was housed with such an inmate, no Defendant was aware of that fact"; (5) Defendants were not aware of Plaintiff's prior grievances; (6) Defendants did not have a motive to retaliate against Plaintiff; (7) Defendants Thibault and Esslin did not fabricate the misconduct ticket and the misconduct ticket was dismissed based on a clerical mistake; and (8) Defendant McDowell's only involvement was being the corrections officer who handled Plaintiff's placement in administrative segregation. Moreover, the First Action resulted in a final judgment on the merits and Plaintiff had a full and fair opportunity to litigate these issues.

Based on the Court's findings in the First Action, Plaintiff's conspiracy to retaliate claim in the Second Action must fail. In this conspiracy claim, Plaintiff alleges that Defendants conspired to retaliate against him and filed a false misconduct ticket for possessing an eight inch knife on September 16, 2012; kept him in administrative segregation for an extended period of time for no reason; and placed him in a six-man cell with other dangerous prisoners. However, Plaintiff cannot establish a conspiracy to retaliate existed between Defendants when the Court has already determined that Defendants did not retaliate against him based on the same events.

Similarly, Plaintiff's excessive force, failure to protect, and deliberate indifference to medical needs Eighth Amendment claims must fail. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "deliberate indifference" to his health or safety. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims); *Cordell v. McKinney*, 759 F.3d 573, 581 (6th Cir. 2014) (applying deliberate indifference standard to excessive force claims); *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (applying deliberate indifference standard to medical claims); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (applying deliberate indifference standard to failure to protect claim). Therefore, Plaintiff must establish that Defendants acted with a culpable state of mind. Here, as discussed above, the Court has already determined that (1) Defendant Thibault did not plant the knife; (2) the misconduct ticket was not false; (3) Plaintiff was not housed with any predator/sexual risk behavior prisoner, or if he was Defendants were not aware of this fact; (4) Defendant Esslin notified healthcare after Plaintiff made statements suggesting self-harm and (5) Defendants were not aware of Plaintiff's prior grievances. Because these issues have already been litigated and decided by this Court, Plaintiff cannot establish that Defendants acted with the requisite intent to state an Eighth Amendment claim.

Accordingly, in the opinion of the undersigned, Plaintiff's claims should be dismissed because he is precluded from litigating these claims. Therefore, the undersigned recommends that Defendants' motion (ECF No. 29) be granted and that this case be dismissed in its entirety. Because this case should be dismissed in its entirety, the following motions are now moot—Defendants' Motion to Stay Discovery and Proposed Order (ECF No. 32, 34); Plaintiff's Motion to Strike (ECF No 37); and Plaintiff's Motions to Compel Discovery (ECF No. 39, 41).

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore,* 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  September 12, 2017

  /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE