UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MORRIS WEATHERSPOON #471817,                    Case No. 2:16-cv-00263

                    Plaintiff,                    Hon. Gordon J. Quist
                                             U.S. District Judge

    v.

JILL STRAHAN,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

State prisoner Morris Weatherspoon filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 28, 2016.  Weatherspoon was incarcerated at the Kinross Correctional Facility (KCF) from September 11, 2012 to January 3, 2013.  His claims stem from numerous disputes he had with Defendant and other Michigan Department of Corrections (MDOC) employees at KCF.  He alleges that KCF staff conspired to falsely charge him with misconduct, failed to protect him from other inmates, retaliated against him for filing grievances, unnecessarily placed him on suicide watch, and failed to treat his medical needs adequately.

The only remaining Defendant in the case is Jill Strahan, who provided mental health care service at KCF.[1]

_____

[1]    The Sixth Circuit affirmed this Court's dismissal of Weatherspoon's claims against KCF Correctional Officers Kim Esslin, John Thibault, and Michael McDowell.  (ECF No. 87, PageID.709.)

This report and recommendation addresses Defendant Strahan's motion for summary judgment, which asserts that Weatherspoon failed to exhaust his administrative remedies.  (ECF Nos. 93 and 94.)  In the alternative, Strahan asks the Court to order a trial on the exhaustion issue.  (*Id.*)  In response, Weatherspoon argues that Strahan failed to present any evidence to support her motion.  He also asserts that he attempted to obtain grievance forms, but his requests were denied by the KCF Grievance Coordinator.  Finally, he argues that the exhaustion requirement should not apply to him because he was mentally impaired during the relevant time period.  (ECF No. 106, PageID.778.)  In reply, Strahan argues that the Step III Grievance Report at KCF and the affidavits of the KCF Litigation Coordinator David Mastaw and KCF Grievance Coordinator Louie Berlinger show that Weatherspoon did not properly exhaust his claims against her.  (ECF No. 109, PageID.804.)

The undersigned wishes to point out that the claims in this case overlap significantly with the claims in another case filed by Weatherspoon: *Weatherspoon v. Williams, et al.*, W.D. Mich. Case No. 2:14-cv-108.  The undersigned has reviewed the pleadings relating to Defendant Strahan's motion for summary judgment as well as statements Weatherspoon made in *Weatherspoon v. Williams*.  The undersigned concludes that no genuine issue of material fact exists with respect to the question of whether Weatherspoon exhausted his claims against Strahan.  The evidence before the Court shows that he did not do so.  Accordingly, the undersigned respectfully recommends that the Court dismiss all of Weatherspoon's claims against Strahan without prejudice.

2

## II.    Additional Relevant Procedural History

The case before the Court – which the Court will refer to as *Weatherspoon v. Strahan* – has a rather complicated procedural history that involves dismissal of some claims, followed by vacation of orders of dismissal and appellate review by the Sixth Circuit.  But to explain the procedural history of this case, the Court must include some procedural history from another case:  *Weatherspoon v. Williams, et al.*, W.D. Mich. Case no. 2:14-cv-108.[2]

In *Weatherspoon v. Williams*, Weatherspoon sued some 20 MDOC employees at KCF for alleged constitutional violations from September 11, 2012 through January 3, 2013.  (W.D. Mich. Case No. 2:14-cv-108, ECF No. 1, PageID.1.)  Included in the list of defendants were Correctional Officer (CO) Thibault, CO McDowell and Sgt. Esslin – all of whom were subsequently named as defendants in *Weatherspoon v. Strahan*.  In addition, in *Weatherspoon v. Williams*, Weatherspoon sued "unknown parties," whom he described as "nurse and/or medical service providers at Kinross Correctional Facility."  (*Id.*)  Weatherspoon's complaint in *Weatherspoon v. Williams* set forth a number of alleged constitutional violations during his time at KCF. Included in Weatherspoon's claims were allegations that Thibault, McDowell and Esslin retaliated against him on September 16, 2012.  (*Id.*, PageID.5.)  Weatherspoon did not, however, name Strahan as a defendant and he did not allege any abusive

---

[2]    All record citations in this report and recommendation are drawn from *Weatherspoon v. Strahan*, W.D. Mich. Case No. 2:16-cv-263, unless otherwise indicated.

conduct specifically on September 17 or 19, 2012, which are the critical dates in *Weatherspoon v. Strahan*.

On August 31, 2015, the defendants in *Weatherspoon v. Williams* filed a motion to dismiss some of the defendants based on misjoinder. (W.D. Mich. Case No. 2:14-cv-108, ECF No. 33, PageID.33, PageID.160.) On February 4, 2016, the Court granted this motion, thereby dismissing several named defendants as well as the unknown parties. (W.D. Mich. Case No. 2:14-cv-108, ECF No. 51, PageID.238, 240.) Following this decision, the case against Thibault, McDowell and Esslin continued. On November 8, 2016, the Court scheduled a bench trial before Judge Gordon J. Quist to begin on June 12, 2017. (W.D. Mich. Case No. 2:14-cv-108, ECF No. 85, PageID.355.)

Then, on November 28, 2016 (before the trial in *Weatherspoon v. Williams*), Weatherspoon filed his complaint in *Weatherspoon v. Strahan*. (ECF No. 1, PageID.1.) Weatherspoon against alleged a number of constitutional violations at KCF in the fall of 2012. In an initial screening opinion dated December 21, 2016, the Court dismissed *Weatherspoon v. Strahan* in its entirety because Weatherspoon filed this case after the 3-year statute of limitations had expired. (ECF No. 4, PageID.62.) In response, on January 9, 2017, Weatherspoon filed a motion for relief from judgment under Fed. R. Civ. P. 60(b).[3] (ECF No. 6.) The Court subsequently construed this motion as a timely motion to alter or amend judgment under Fed. R. Civ. P. 59(e). (ECF No. 13, PageID.101-02.) On January 23, 2017, the Court granted

---

[3]    That same day, Weatherspoon filed a notice of appeal regarding the dismissal of the action. (ECF No. 10, PageID.95.)

Weatherspoon's motion to alter or amend judgment.  The Court vacated its screening opinion and order as to Defendants Esslin, Thibault, and McDowell because the statute of limitations had tolled with respect to these defendants because they were defendants in Weatherspoon's 2014 case, *Weatherspoon v. Williams*.[4]  (*Id.*)  The Court, however, did not vacate its decision with respect to Defendant Strahan.

On February 7, 2017, Weatherspoon filed a motion to strike the Court's order that vacated its initial dismissal of his claims against Defendants Esslin, Thibault, and McDowell.  (ECF No. 18, PageID.116.)  Essentially, Weatherspoon asked the Court to reconsider its ruling that his claims against Strahan were time-barred.

Before the Court ruled on that motion, the Court conducted the bench trial in *Weatherspoon v. Williams*.  That trial took place on June 14, 2017, in the Marquette courthouse.  The only remaining defendants in the case at that point were Thibault, McDowell, and Esslin.  The Court found in favor of the defendants on all claims. (W.D. Mich. Case No. 2:14-cv-108, ECF No. 175, 176, 177.)

As a result, on June 21, 2017, Thibault, McDowell and Esslin filed a motion for summary judgment in *Weatherspoon v. Strahan*.  (ECF Nos. 29, 30.)  They argued that, as a result of the bench trial in *Weatherspoon v. Williams*, Weatherspoon's claims against them in *Weatherspoon v. Strahan* were barred by the doctrines of *res judicata* and collateral estoppel.  U.S. Magistrate Judge Timothy P. Greeley agreed and entered a report and recommendation that recommended that the case be

---

[4]    As a result of the district court's decision to vacate its previous order, the court of appeals dismissed Weatherspoon's appeal as moot.  (ECF No. 51, PageID.433.)

dismissed in its entirety because Weatherspoon's claims were barred by the doctrine of collateral estoppel.  (ECF No.44, PageID.395.)

Before ruling on Defendant's motion for summary judgment, the Court addressed Weatherspoon's motion to strike (*see* ECF No. 18, PageID.116 (Weatherspoon's motion dated Feb. 7, 2017)), which sought to bring Strahan back into the case.  On September 29, 2017, the Court interpreted this motion as a motion for reconsideration and granted it.  (ECF No. 47, PageID.412.)  The Court concluded that Weatherspoon had shown that the statute of limitations with respect to his claims against Strahan were tolled because he had sued her in *Weatherspoon v. Williams*.  (*Id.*, PageID.413.)  The Court reasoned that Strahan was one of the unknown parties in *Weatherspoon v. Williams*, and, as a result, the statute of limitations was tolled while the claims against her in *Weatherspoon v. Williams* were ongoing.  Thus, Weatherspoon's claims against Strahan were brought back into this case more than five years after the underlying events.

On December 17, 2017, this Court adopted Judge Greeley's report and recommendation, in part, thus dismissing Thibault, McDowell and Esslin, but allowed Weatherspoon's claims against Strahan to go forward.  (ECF No. 53, PageID.438.)

On December 29, 2017, Weatherspoon filed an interlocutory appeal.  (ECF No. 55, PageID.442.)  He sought review of this Court's granting of Defendants' motion for summary judgment.   On February 14, 2018, the Sixth Circuit dismissed

Weatherspoon's interlocutory appeal due to lack of jurisdiction.  (ECF No. 65, PageID.508.)

On March 12, 2018, Strahan filed a motion for summary judgment.  (ECF No. 67, PageID.519.)  Strahan argued that Weatherspoon failed to properly exhaust his claims against her.  On September 12, 2018, Judge Greeley issued a report and recommendation that recommended that the Court rule that Weatherspoon had failed to properly exhaust his claims against Strahan.  (ECF No. 74, PageID.642.)  On October 4, the Court adopted the report and recommendation and entered a judgment in favor of Strahan.  (ECF No. 77, PageID.653; ECF No. 78, PageID.655.)

On October 17, 2018, Weatherspoon filed an appeal seeking review the Court's order granting of Strahan's motion for summary judgment.   (ECF No. 81, PageID.674.)

On June 4, 2017, the Sixth Circuit held that Strahan failed to provide enough evidence to show that she was entitled to summary judgment based on Weatherspoon's failure to properly exhaust his claims. (ECF No. 87, PageID.708.) The Court reasoned as follows:

> Weatherspoon alleged that he was on modified access to the grievance procedure, and when he asked for grievance forms, prison grievance coordinators refused to provide them. While Strahan acknowledged Weatherspoon's allegations in her motion for summary judgment, the only evidence she presented to refute them was an affidavit from Departmental Technician Carolyn Nelson, which listed all grievances that Weatherspoon filed through the step III grievance process. Although the list showed that Weatherspoon filed grievances during the relevant period, that fact alone does not rebut his claim that he did not file a grievance because he was on a modified grievance

7

procedure and was denied the forms when he requested them. Because Strahan "did not present evidence that shows the absence of a genuine dispute of fact as to whether [Weatherspoon] exhausted his administrative remedies," she was "not entitled to summary judgment on the issue."

(*Id.*, PageID.711 (citations omitted).)

Subsequently, the Sixth Circuit issued a mandate in accordance with its earlier holding.  (ECF No. 88, PageID.712.)

On September 10, 2019, Strahan filed a motion for summary judgment that again argued that Weatherspoon failed to properly exhaust his claims against her. (ECF No.94, PageID.721.)  This time,[5] Strahan provided additional explanation regarding the MDOC's policy for prisoners who are placed on Modified Access status to the grievance system due to prior abuses of that system.  Strahan included affidavits from KCF Litigation Coordinator David Mastaw (ECF No. 94-2, PageID.736) and KCF Grievance Coordinator Louie Berlinger (ECF No. 94-3, PageID.744).

## III.   Summary of Plaintiff's Allegations Against Strahan

At their core, Weatherspoon's allegations are a result of a series of disputes that began while he was housed at Chippewa Correctional Facility (URF).

---

[5]   When a superior court remands a case for further proceedings and does not mandate that no new evidence be considered, the lower court must provide further proceedings which may include revisiting its earlier ruling with additional evidence. *Carter Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 751 (6th Cir. 2001). As such, the undersigned concludes that the Court possesses the discretion to rehear the exhaustion issue.  And the undersigned respectfully recommends that the Court do so.

Weatherspoon was transferred to KCF on September 11, 2012.  Weatherspoon alleges that five days later, on September 16, 2012, Defendants Esslin, Thibault, and McDowell conspired to charge him with a false misconduct for possession of an eight-inch knife because Weatherspoon filed grievances at URF.  Weatherspoon claims that, as a result of receiving that ticket, he was placed in a six-man cell in administrative segregation and that the other inmates in the cell made him afraid of being sexually assaulted.  Then, according to Weatherspoon, he took the advice of former Defendant Esslin and claimed that he was suicidal so that he would be placed into protective custody – suicide observation.

On September 17, 2012, Strahan assessed Weatherspoon's suicide risk. Weatherspoon says he told Strahan that he was not suicidal and that he had only claimed to be suicidal to avoid being kept in dangerous administrative segregation. Weatherspoon also says he told Strahan that he was falsely accused of the misconduct that placed him in segregation.  Strahan allegedly responded harshly, saying that Weatherspoon had possessed a knife.  Strahan took no action to get Weatherspoon released into the general population.  Weatherspoon contends that, on September 19, 2012, Strahan joined a conspiracy with former Defendants Esslin, Thibault and McDowell, who themselves were continuing a conspiracy against Weatherspoon because of Weatherspoon's conduct when he was housed at URF.  (For clarity, it should be noted that this alleged conspiracy took place at KCF.)  Weatherspoon also contends that, despite knowing that continued placement in the suicide cell was

detrimental to his mental health, Defendant Strahan refused to release him from suicide observation.

## IV.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V.    Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

10

The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).   In rare circumstances, an administrative remedy  will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage

of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*,

2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[6], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is

---

[6]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[7]

---

[7]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

## VI.    Analysis

Weatherspoon argues that Strahan has again failed to provide enough evidence to entitle her to summary judgment.  (ECF No. 106, PageID.781-784.) Weatherspoon also argues that the exhaustion requirement does not apply to him because he was mentally incapacitated during the relevant time period.[8]  (*Id.*, PageID.785-787.)  And he asserts that MDOC officials refused to provide him with necessary grievance forms.  In his affidavit, Weatherspoon swears (1) that he filed grievance KCF **12-120131528** against Strahan, (2) that the MRF Grievance Coordinator is unable to find any records of that grievance, and (3) that there are medical records that verify his mental health statements that the records were used in a different lawsuit.  (ECF No. 107, PageID.795-799.)

As an initial matter, the undersigned concludes that Weatherspoon is not exempt from the PLRA's exhaustion requirement[9] due to mental health issues.  The Court notes that there is no evidence in the record showing that Weatherspoon suffers from the mental health issues that he claims.  Weatherspoon says that verifying

---

[8]    The only support for Weatherspoon's mental incapacity allegation is in his affidavit supporting his motion requesting the Court to hold Strahan in contempt of Court.  (ECF No. 105, PageID.775.)  He swore that the Court, the Michigan Attorney General, and prison are aware of his mental illness, and possess medical records that they are withholding from him.  (*Id.*)  There are no medical records in the record regarding Weatherspoon's mental health.

[9]    The PLRA provides as follows:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

medical records were used in other lawsuits, but Weatherspoon fails to explain why he is now incapable of accessing these documents despite his due diligence.  Moreover, the record shows that Weatherspoon filed numerous grievances in September and December 2012, which indicates that he is fully capable of filing grievances.  (*See* ECF No. 68-2, PageID.539-42 (documenting grievances Weatherspoon filed at URF on Sept. 4 and 5, 2012); ECF No. 94-2, PageID.736, 738 (noting Weatherspoon filed eight grievances at KCF on Dec. 27, 2012).)  Thus, the undersigned concludes that any mental health issues Weatherspoon may have experienced did not prevent him from filing grievances and, accordingly, would not excuse him from the exhaustion requirement.

The undersigned now turns to whether a genuine issue of fact exists with regard to Weatherspoon's exhaustion of administrative remedies.  To conduct this analysis, it is necessary to first establish an undisputed timeline of events.  The records in this case show:

- that prior to transferring to KCF on September 11, 2012, Weatherspoon was incarcerated at URF (ECF No. 94-2, PageID.738, 740);

- that Weatherspoon filed approximately 14 grievances at URF on September 4 and 5, 2012 (ECF No. 68-2, PageID.539-42);

- that Weatherspoon remained at KCF until January 3, 2012 (*Id*., PageID.740);

- that Weatherspoon was on Modified Access status when he arrived at KCF on September 11, 2012 (ECF No. 94-2, PageID.738, 740);

16

- that Weatherspoon did not file any grievances at KCF prior to December 27, 2012 (ECF No. 94-2, PageID.738);

- that Weatherspoon filed 8 grievances on December 27, 2012, and that 6 of these were rejected as duplicative (ECF No. 94-2, PageID.740); and

- that Weatherspoon was again placed on Modified Access (to the grievance procedure) on January 3, 2013 (ECF No. 94-2, PageID.742).

In addition, it is undisputed that the record before the Court does not contain a grievance against Strahan for the constitutional violations that Weatherspoon asserts against her. That fact alone, generally, would be dispositive of this matter. As a general matter, a prisoner-plaintiff's "bare assertion" that he filed a grievance is not enough to establish a genuine issue of material fact. *See, e.g., Kelly v. Stoddard*, No. 1:14-CV-1278, 2017 WL 3887104, at *2 (W.D. Mich. Sept. 6, 2017) (ruling that plaintiff's "bare assertion" that he filed a grievance was not enough to survive summary judgment). But, as the Sixth Circuit pointed out, Strahan failed to provide evidence that would "rebut [Weatherspoon's] claim that he did not file a grievance because he was on a modified grievance procedure and was denied the forms when he requested them." (ECF No. 87, PageID.711.)

Strahan correctly notes that being on Modified Access status did not categorically prevent Weatherspoon from properly exhausting his claims against her. (*See* ECF No. 94, PageID.731 (citing *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).) A review of the relevant Policy Directive (PD) indicates that this is correct. (*See* ECF 94-3, PageID753-54 (MDOC PD 03.02.130 ¶¶ HH-LL).)

According to this PD, a prisoner is placed on Modified Access if the MDOC finds that the prisoner has filed an excessive number of improper grievances.  (*Id.*, PageID.753 (¶ HH).)  A prisoner who is on Modified Access may still filed a grievance if the Step I Grievance Coordinator concludes that the issue the prisoner wishes to grieve is grievable.  (*Id.*, PageID.754 (¶ KK).)

Louie Berlinger attests that he was the Grievance Coordinator at KCF during the time that Weatherspoon was incarcerated there.  (*Id.*, PageID.745.)  Thus, he would have been responsible for reviewing Weatherspoon's proposed grievance against Strahan.  Berlinger also attests that he followed MDOC policy to determine whether a prisoner who was on Modified Access should be provided grievance forms.  (*Id.*, PageID.746.)  He says that he would not withhold forms if a prisoner had a grievable issue.  (*Id.*)  Weatherspoon, however, contends that Berlinger did withhold grievance forms improperly.  (ECF No. 106, PageID.782.)  Therefore, Berlinger's statement that he complied with MDOC policy does not show the absence of a genuine issue of material fact.

The PD adds an additional complication to the matter.  Paragraph KK requires the Grievance Coordinator to "maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial."  (*Id.*, PageID.754.)  Thus, pursuant to the PD, if Weatherspoon had requested grievance forms and been denied, the Grievance Coordinator should have kept a record of the denial.  But Berlinger does not indicate whether he kept such records or whether he searched the records and failed to locate a request from

18

Weatherspoon during the relevant time period.   Thus, based on the requirements of this PD, a genuine issue of material fact remains.

Nevertheless, the undersigned recommends granting Strahan's motion because Weatherspoon's claim that he sought to file a grievance against Strahan in the fall of 2012 is contradicted by other parts of the record.

First, in Weatherspoon's 2014 case – *Weatherspoon v. Williams*, 2:14-cv-108 – he claimed that *he did file grievances against the defendants at KCF.*  Shown below is a part of his complaint.

<u>V.Exhaustion of Remedies:</u>

32.The plaintiff Morris Weatherspoon used the MDOC grievance process available at Kinross Correctional Facility to try and solve the problem.On each event the plaintiff presented the facts related to this complaint.On each event the plaintiff was not sent a response stating or acknowledgement that the grievance(s) had been recieved or denied.Plaintiff had exhausted all administrative means or relief to no avail....SEE 7 memorandums regardi

(W.D. Mich. Case No. 2:14-cv-108, ECF No. 1, PageID.8.)  As explained the procedural history section of this report and recommendation, this case (*Weatherspoon v. Strahan*) and *Weatherspoon v. Williams* overlap considerably as to claims and defendants.  Indeed, in February 2017, Weatherspoon asked this Court to set aside its order dismissing Strahan from this case (W.D. Mich. Case No. 2:16-cv-263) for a statute of limitations violation.  (ECF No. 18, PageID.116.)  Weatherspoon explained that Strahan was the unknown party he had sued in *Weatherspoon v. Williams*, W.D. Mich. Case No. 2:14-cv-108.  (*See* ECF No. 18, PageID.118 (stating "the unknown parties constitute the defendant Strahan").)   It is clear from Weatherspoon's

complaint in his 2014 case that he did file grievances at KCF.  His contention then was that he did not receive a reply.  This statement is inconsistent with his more recent claim that he was prevented from using the grievance system at KCF.  (*See* ECF No. 1, PageID.19 (stating that "plaintiff attempted without success to timely exhaust available administrative remedies, but was thwarted because the Kinross Correctional facility and or prison officials refused to provide the plaintiff with the necessary [forms]"); ECF No. 106, PageID.782 (explaining that "Plaintiffs efforts were thwarted because of the KCF and MDOC officials refusal to provide Plaintiff with the necessary and required grievance form").)

In *Weatherspoon v. Williams*, Weatherspoon says he filed a grievance against the defendants, which included an unknown party he later identified as Strahan.  In order to demonstrate exhaustion here, Weatherspoon should present the Court with his grievance.  He has not done so.  Instead, he offers only a bare assertion that he filed a grievance.

This inconsistency has another layer.  In the affidavit that Weatherspoon attached to his response to Strahan's most recent motion for summary judgment, he asserted that he filed a grievance against Strahan and even provides a number for this grievance.  (*See* ECF No. 107, PageID.795.)  But, as explained above, Weatherspoon did not know Strahan's name in 2012 and would not have been able to name her in a grievance at that time.  At best, he would have identified her as an unknown party in a grievance in 2012.  Weatherspoon's response does not explain this issue.

Third, the claims that Weatherspoon alleged against the unknown party in *Weatherspoon v. Williams* are not the same claims that he now states against Strahan.  In his 2014 complaint, Weatherspoon set forth detailed claims against some 20 MDOC employees at KCF for constitutional violations occurring during the entire time he was incarcerated there – September 11, 2012 to January 3, 2013.  He asserted that the unknown party denied him medical care from December 8, 2012 to January 3, 2013 by declining to treat a problem Weatherspoon was having with his left leg. (W.D. Mich. Case No. 2:14-cv-108, ECF No. 1, PageID.7.)  He went on to state that his legal claims against the unknown party were based on violations of the Eighth Amendment.  (*Id.*, PageID.9.)  Weatherspoon alleged numerous constitutional violations by Thibault, McDowell and Esslin on September 16, 2012. (*Id.*, PageID.6.) These claims overlap with his claims against these defendants in this case.  (ECF No. 1, PageID.6-9.)  A review of the two complaints indicates that Weatherspoon is alleging facts relating to the same nucleus of events.  But, in his 2014 complaint, Weatherspoon neglects the unknown party's role in the events of September 16-19, 2012.  In fact, he makes no specific allegations at all with regard to these dates.  (*See* W.D. Mich. Case No. 2:14-cv-108, ECF No. 1, PageID.1.) The undersigned finds it difficult to credit Weatherspoon's claim that he wished to file a grievance against Strahan for her activities on September 16-19, 2012, when he failed to allege his claims against Strahan (one of the unknown parties) in his 2014 complaint.

To prevail in her motion for summary judgment, Defendant Strahan must convince the Court that there is no genuine issue of material fact as to whether

Weatherspoon exhausted his administrative remedies.  And, in fact, the record before the Court shows a complete absence of grievances filed by Weatherspoon against Strahan.  Weatherspoon, however, contends (inconsistently) that he either did file grievances at KCF or that he would have done so, but was thwarted.

As explained above, Weatherspoon's claims in response to the Strahan's motion for summary judgment are simply inconsistent with the record.  Inconsistency is not, by itself, enough to dismiss a case.  But the inconsistency here are so significant that they necessitate the granting of Strahan's motion for summary judgment.

In analyzing Defendant Strahan's motion for summary judgment and Weatherspoon's response, the undersigned is required to consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co.*, 421 F.3d at 436.  The Second Circuit explained a district court's responsibilities in assessing inconsistent testimony in *Jeffreys v. The City of New York*:

> Our inquiry focuses on whether the District Court erred in concluding, upon review of the record as a whole, that there were no genuine issues of material fact in the instant case-that is, that even after drawing all inferences in the light most favorable to Jeffreys, no reasonable jury could have issued a verdict in his favor. While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," . . . and thus whether there are any "genuine" issues of material fact, without making some assessment

22

> of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

426 F.3d 549, 554 (2nd Cir.2005) (internal citations omitted).

Disputed facts regarding exhaustion under the PLRA are not issues for a jury to resolve. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (stating that "disputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial"). Nevertheless, the principles in *Jeffreys* apply here. Weatherspoon's claims that he either filed a grievance against Strahan or would have done so if he had not been thwarted rely entirely on his own testimony in the form of affidavits and complaints. But, the inconsistencies found in Weatherspoon's affidavits and complaints make the exhaustion issue so one-sided that the undersigned must recommend that the Court grant Strahan's motion.

## VII.  Recommendation

The undersigned respectfully recommends that this Court grant Strahan's motion for summary judgment and dismiss Weatherspoon's claims against Strahan without prejudice. If the Court adopts this recommendation, then this case will be dismissed.

Dated:  May 11, 2020                              /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).